Thank you, Your Honor. May it please the Court, Eric Brignac for the appellant, Mr. Carlos Ofarrit-Figueroa. The District Court committed two mistakes in this case, two related mistakes, because the two prongs of the statute are related. First, the District Court found, as a matter of fact, that Dr. Malnick's opinion was that Mr. Ofarrit suffered from paraphilia NOS based on quasi-exhibitionism. Right, and you're saying that the doctor revised his diagnosis to non-consent. Right, to antisocial personality disorder and paraphilia NOS non-consent, and did not. First, we see what he says. He says paraphilia NOS non-consent. And the District Court in this case didn't just say, and I think this is in some ways what the case may come down to, didn't necessarily say, my own independent review of the record, I find that there's some sort of quasi-exhibitionism. And we would contend that that, under the Addington case, would not have been appropriate for the District Court to do. What the District Court did was say, I'm reading Dr. Malnick's opinion, and Dr. Malnick finds this basis in quasi-exhibitionism. We can look at Dr. Malnick's opinion. It's in the record. I look at Joint Appendix 401, the last full paragraph. He says, the exhibitionistic activity in his case is much more likely a direct extension of prominent anger and a need to denigrate women and empower himself in a disordered way. Well, didn't the court actually look at it as sort of a dual diagnosis? I mean, when you look at the court's order, findings and fact and conclusions of law, it looks like on page 5, the court lists first Dr. Malnick's opinion of paraphilia NOS, and then says, second justification, the non-consent element. Then the court says the court does not express an opinion on the non-consent specifier and looks to the earlier opinion that he suffered from paraphilia NOS. So the court seems to be looking at these as kind of two contemporaneous findings rather than a revised finding. It seems to me if there is error in the case, that's where the error occurred. Would you like to comment on that? Of course, Your Honor, and I think that's at Joint Appendix 303. And I actually read this, and I admit to not having thought of that opinion. I actually read this, Your Honor, initially and in our briefs, as the district court finding that quasi-exhibitionism diagnosis in the revised opinion, which I think we explained thoroughly wasn't there. Your Honor is saying that it appears a district judge may have gone back to Dr. Malnick's first report. That's the way it looks reading his. Right, and I will accept that, and that's wrong. Dr. Malnick got rid of that opinion. Dr. Malnick wrote the second report because upon further review, he decided that his first report was incorrect. You're saying it's a changed diagnosis merely because it starts with paraphilia. It has a different qualifier, so it wasn't an evolution in his diagnosis but rather a change. Right, and didn't Dr. Malnick conclude that the only reason it was not exhibitionist is because he had a desire to actually have intercourse or sex with the individuals he exposed himself to? And classically, under the manual, you would have to be someone who does not intend to have sex with an individual. It was that technical distinction that led him to change his diagnosis, but Dr. Malnick clearly found he had mental illness, did he not? And that's the important factor. Your Honor, yes, Dr. Malnick, all three, even the expert in favor of Mr. O'Farrill, found a mental illness. Right. And so the question is, what was the specific mental illness? Now, I would respectfully disagree. What comes down to here is a debate over diagnostic labels. All of them agree he's got a mental illness. All of them agree he's got a prior conviction. And all of them, even the third expert, concluded that if his sexual advances were rejected, he could be aggressive and could be harmful to the victim. Yes, Your Honor. And so I think you're hitting, actually, I think, the nail on the head in why this case has differed as much as this court has heard a fair amount now of 48 cases, the Springer case, the Wooden case, Caporale. I've actually been involved in most. I recognize the fact that psychiatry is an inexact science, and it's sometimes difficult to label something. So just because it doesn't conform with the DSM doesn't necessarily mean that it's not a mental illness for the purpose of the Adam Wall statute. Your Honor, I agree, and more to the point, the Supreme Court in Crane agrees. And that is not our argument here. If our argument was that it has to be in the DSM or it has to be in any sort of a textbook, we'd lose. I don't even think this court would have granted argument on that point. It's settled by Crane. What the Supreme Court has also said, and the Supreme Court made this clear in Addington, and the Supreme Court, to some degree, also made this clear in Crane, is that there does have to be a reliance on the expert testimony and that it informs but doesn't control. It certainly informed Judge Boyle's decision, or did it not? It informed Judge Boyle's decision, but I would say the Supreme Court in Addington, I do think that these commitments, because of the nature of the liberty interest at stake, this is not like the normal appeal that this court will hear, where even the first case today, there was a question of if something in the record, if anything in the record can support the conclusion reached below, then this court has some obligation to uphold that. The Supreme Court in Addington was very careful. That's the case where they said, okay, first of all, these need to be clear and convincing, because this is different in kind. And in Vitek v. Jones, the Supreme Court said, you know, there are some procedural protections in a civil commitment case different in kind than in other civil cases. And one of those protections that the court mentioned in Addington is that all of the facts need to be filtered through the opinion of an expert, and the exact language is that even a trained judge cannot be expected and cannot reach a sort of freelancing conclusion, which we sort of expect district judges to do in almost every other context. Well, Judge Boyle in this case agreed with Dr. Graney and Dr. Malenik that there was paraphilia, which is a mental disorder. He agrees that it was not otherwise specified. And didn't he use the exhibitionist tendencies merely as descriptive of the mental illness decision that he had made? And both of these, all of the experts talk about exhibitionism, but not all of them diagnose it specifically. And, Your Honor, where I would disagree with that, respectfully, is that diagnosing someone with paraphilia is the equivalent of diagnosing them with virus. You know, it's too broad of a category. Now, certainly the statute mentions mental illness, abnormality, or disorder. Now, I don't think anyone agrees, and the district court in this case didn't agree that any mental illness, abnormality, or disorder would actually qualify under that statute. That must be read in context. And the district court, and actually Justice Ginsburg has gone on the record saying this too, that, for instance, antisocial personality disorder, which 75% of the people in BOP suffer from, that's probably not narrow enough for this level of civil commitment. And the district court, again, in this case, found that the paraphilia NOS, the focus on non-consenting partners, he didn't want to go there because he understood as a matter of law that this diagnosis, in a sense, pathologizes or attempts to medicalize the propensity to commit sexual assaults, which we certainly are not here to diminish the seriousness of rape or sexual assault, but that's not the question. The question is the pathology. And the even more narrow question, we're sort of discussing whether the district court, on this record, could have found what he did. Well, we don't have to go there. The district court said, you know, on this basis alone, that Dr. Malnick diagnosed him with paraphilia NOS exhibitionism. And I think we may disagree, Your Honor. I actually think that is important, that paraphilia NOS is not a freestanding diagnosis, that NOS is a way of saying, look, 6 billion people in the world, they're complex, we can't list all the diagnoses. So paraphilia NOS, an attraction to teenagers, a sexual attraction to Archie comic books, a sexual, you know, there's a lot of variety out there. There's a lot of mental illnesses. You don't stop at paraphilia NOS. You say paraphilia NOS. But it's NOS in this case because the exhibitionism is not designed strictly to get the pleasure of exposing yourself. Here he actually wants to have sexual contact with the individuals to whom he exposes himself and takes it outside of the diagnostic statistic manual. Isn't that not correct? That, Your Honor, I will say is correct as to superficially one of the distinctions Dr. Malnick points to. But I'll also point to Joint Appendix 396. I think the core of Dr. Malnick's opinion, he says, you know, I suspect that underneath, he was talking about the pathology, is a view of women as objects, a need to denigrate them, prominent feelings of inadequacy and anger. It's related to his level of comfort with himself as a rebel, an individual who does not accept the rules of society. And again, I already quoted 401 where he talks about the exhibitionist activity is much more likely a direct extension of prominent anger. And just to be candid with the court, that first thing I quoted actually came from his first report. The second 401 comes from the second report. So while certainly, Your Honor, I do think that there was a technical, he didn't meet the DSM definition, so we're not going to diagnose him with exhibitionism, I would submit, based on those quotes and really the balance of his reports and testimony, that Dr. Malnick really meant paraphilia NOS, non-consent, and antisocial personality disorder. Mr. O'Farrill is an angry man. Mr. O'Farrill does very bad things because of that anger. He is horribly maladjusted. All of this is true. All of this is true probably about half the people in the Bureau of Prisons. The question is, did the district court clearly err in finding that Dr. Malnick opined that this was a quasi-exhibitionism, and I would just submit that when you read Dr. Malnick's report and don't just take parts of it out of context, he really did, upon reviewing this case, come to this idea that Mr. O'Farrill at Figueroa, it's driven by anger. It's driven by a need to denigrate women, to treat them as objects. Of course, he also sexually assaulted the chief chef at USP Terre Haute, did he not? And he raped a woman in New Jersey, Your Honor, and he has 40 or 50 instances of public masturbation, of exposure. He is constantly insolent to staff in the Bureau of Prisons. I cannot, no one could stand up here and say that Mr. O'Farrill is anything other than angry, maladjusted, someone with a bad, horrible criminal history, and you know that we have something to take care of that, and it's the criminal process, and he was prosecuted for those crimes, and he was sentenced for those crimes, and he served those sentences, and now the question comes in, we let very dangerous people out of the Bureau of Prisons every day. That's what we do. We're the United States. And the Adam Walsh Act is designed to prevent that, to protect women, is it not? Yes, the Adam Walsh Act, Your Honor, is certainly designed to capture, to protect society and to treat individuals through taking a narrow class of individuals. How do we decide what's narrow? You know, I think the Supreme Court has given us some indication of this. You know, we look at, you know, the Fuchsia case, where the state of Louisiana was basically saying, hey, you know, you're a dangerous person, you can't prove you're not dangerous, we just want to keep you in here. And, you know, Fuchsia, we cite somewhat frequently in our brief, the Supreme Court says, yeah, that's, we get it. That's what makes it, but you can't do it. And that, yes, Your Honor. Yeah, Mr. Brignan, I don't mean to interrupt you, but I'm seeing your yellow light. And I want to direct your attention to the bottom of J395 and the top of 396 and have you help me with this. You've characterized this as a change in diagnosis. And is it fair to say that the Dr. Malenik is not rejecting his prior diagnosis, but is simply admitting of an equally possible diagnosis, which were the words that he used at the bottom of 395 and the top of 396, equally possible diagnosis, paraphilia NOS with attraction to non-consenting victims. So, is he saying, well, you know, things have happened since I last considered this case. And I'm reevaluating the violent aspect of his behavior. And I think that it's equally possible you have paraphilia with attraction to non-consenting victims. So, help me with that, because it looks like it's not the stark change that you're portraying to us in your argument. Yes, and I guess, Your Honor, I would point to two things. You say it's an evolution. You know, if we look, the very- Equally possible diagnosis. Now, to me, that means not I have changed, I have not done, I have not rejected the first one and moved to the second, but that I see two diagnoses. I first targeted this exhibitionism, but now I'm giving additional credence to the violent aspect of this man's behavior and conclude that an equally possible diagnosis is that of paraphilia NOS non-consent. Okay. So, help me- Yes. As to why this is a departure and a change rather than something that he hasn't really rejected the first and moved on to the second. And I would do that by focusing, Your Honor, on the very next page, Joint Appendix 399, Dr. Malnick's final report. That was January 2012. Your Honor was quoting from his August 2011 report. So, if we say, okay, let's take his last best opinion, and this would also accord- Then you're honing in on the language. I now believe the more appropriate diagnosis would be that of paraphilia NOS non-consent. Right. It more accurately encompasses the true nature and origin of this- Does that mean he has rejected the other? Your Honor, if it does, and I think here we can look at what he did not say, he could have said, you know, I add this diagnosis. He certainly continued, for instance, Your Honor, to cite the antisocial personality disorder. So, if this were simply, hey, I'm adding a diagnosis, he wouldn't have mentioned it. I think, and, you know, Your Honors, I see my red light's on, so, unless there are further questions. Well, go ahead and finish your sentence. We're not that- Okay, I'm just trying to show respect. Your Honors, I would simply say that, you know, if you read- The reason that I think it's not the best reading of his reports to read it as an evolution is because the last thing he submitted to the court- He said more appropriate. You know, I was saying A and B, now I say A and C. And that, as a matter of logic, only makes sense if B is no longer true. Okay, and you'll have a chance to revise. To comb through the record over the next 20 minutes. All right, sir, thank you. And Mr. James, we'd like to hear from you now. Thank you, Your Honor. Good morning to you. My name is Michael James. May it please the Court. I represent the United States in this matter. Let me quickly jump to answer, I guess, in part, Judge Keenan's last question to counsel. At Joint Appendix 132, Dr. Malnick clearly states, yes, you could diagnose him with exhibitionism. And that's at Joint Appendix 132. You could do that. But he thought that after careful consideration that paraffin NOS was the more appropriate diagnosis. With regard to- I guess he talks about changing the diagnosis at Joint Appendix 131, doesn't he? He does refer to it as a change. I hadn't noticed that before. That's correct, Judge. He just states that you could say exhibitionism with him, but the more appropriate one was paraffin NOS. Right, but now he's saying he's referring to it as a change. I hadn't picked that up until just now. I don't believe that as a change that it somehow lessens the force and effect of the district court's reliance on Dr. Malnick. As Judge Hudson stated, what in essence in this appeal appears with regard to issue number one is a diagnostic labeling. Appellant's counsel has stated that Mr. O'Farrill is an angry man. He's a very angry man. But he's more than just that. He's sexually deviant. All experts, whether it's the experts called by the government, whether it is Dr. Rossell called by the respondent in this, say he is atypical. He is not the typical exhibitionist. He doesn't just do this for self-gratification. He does this because he wants to have sex with the individuals that he is exposing himself to. With regard to that, at Joint Appendix 212, when I cross-examined Dr. Rossell, when we're talking about the antisocial nature of Mr. Malnick and the fact that I believe that there are many people in prisons with antisocial personality disorder, I point out to Dr. Rossell that most individuals with antisocial personality disorder do not expose themselves and masturbate as openly as Mr. O'Farrill. And Dr. Rossell agreed. So he's not a typical antisocial personality disorder individual. And he's not a typical exhibitionist, as all of the experts have agreed. Now, with regard to supporting the record for the court's decision, contrary to what Appellant Counsel has stated, at Joint Appendix 402, Dr. Malnick points out in his report, and this is throughout his testimony as well, beginning with a paragraph that begins, Dr. Malnick stated, more importantly, O'Farrill, referring to O'Farrill, developed a concomitant and powerful sexual deviation separate and apart from an antisocial personality disorder. And so, in the district court's order, when the district court correctly notes that Dr. Malnick had two bases for his paraphernalia NOS, one was the exhibitionism-like behavior, the other was the non-consent, the district court's order is supported by the record, by Dr. Malnick's report, his final report, I should say, the paraphernalia NOS report, and by the testimony during the course of the trial. What about his statement on 403? For all the above reasons, I now believe that the more appropriate diagnosis in this case is that of paraphernalia NOS non-consenting victims. So he does seem to have gone through a very careful process and concludes by saying, I've changed my mind. And whether Dr. Malnick has changed his mind through his own reflection with regard to the, from straight exhibitionism and antisocial personality disorder to paraphernalia NOS with these exhibitionistic tendencies, the district court, as the fact finder, accepted the basis, the exhibitionism basis, exhibitionistic tendency basis of Dr. Malnick's report. Let me ask you a question that I've been thinking about here. What if we were to disagree with you on that? What would be the remedy in this case? In other words, has the government failed to meet its proof burden and that's the end of it? Or does it go back to the district court for clarification? What's the remedy? Because I've never seen a situation like this where if we were to conclude, and I'm not saying we will at all, but if we were to conclude that there is a departure and that the district court relied on a rejected diagnosis rather than the current diagnosis, what's the remedy? Well, then the, we believe that the appropriate remedy would be for the court to send it back for clarification, not to find that the government has not met its proof. And that is what, if it would come to that. Could I ask you a question about Mr. Brignac's second point? He's saying that the court failed to tie the diagnosis to his likelihood to have serious difficulty refraining. When you look at Judge Boyle's order, he's tying the likelihood of re-offending, the serious difficulty prong, to Mr. Offit-Figueroa's prior history. And never seems to link the likelihood to re-offend to the diagnosis. And isn't that what's required under the statute? Well, I would begin, Your Honor. Maybe there's some clarification needed here, too. I would begin, Your Honor, by pointing out that in the court's order under 304, the joint appendix, as court points out, whether as a result of the abnormality disorder, you would have serious difficulty, the court points out that it's based upon his deviant sexual interests. That he had problems in controlling his behavior. Now, the court cites the knife point rape, the prior conviction. The court cites his assaulting a corrections officer. His conduct rather than his diagnosis. And he says this evidence of aggravated, persistent, and sexually violent conduct indicates to the court by clear and convincing evidence that Mr. Offit-Figueroa would have serious difficulty refraining. So, he's tying it to the conduct and not the diagnosis. Is that a failure, an analytical failure in his decision? Your Honor, I think his conduct, well, the court makes reference, the court has found that he's sexually deviant. The court then, in its opinion, it cites his inability to refrain based on his sexual deviance. So, the court previously finds that he is sexually deviant, then cites the fact in the third prong here about his sexual deviance, and then ties that with examples of it based on his conduct. But when it references the serious difficulty, it only refers to the conduct and not the diagnosis, unless you can show me otherwise. The court stated, beginning at Mr. Offit-Figueroa has demonstrated, even while incarcerated, a serious inability to refrain from acting upon his deviant sexual interests. And that deviant sexual interest is what the court had found in the previous section. So, the court previously finds that he has a deviant sexual interest. Getting to the third and last prong, the court states that Offit-Figueroa has, even while incarcerated, a serious inability to refrain from acting upon his deviant sexual interest. Right, but the statute says not as a result of deviant interest, but as a result of the illness, abnormality, or disorder. I understand the court's concern, and whether it, I believe that all, I guess all orders can be worded more perfectly. But I don't believe that this order is, the court's order is insufficient. Because when you read the order as a whole, and you read the analysis that the court goes through with regard to the deviant sexual interest that it has found, the paraphernalia and OS, the exhibitionistic tendencies, I don't think you can necessarily just totally separate that out from the rest of the order. And the court, in referencing his deviant sexual interest, the court is referencing, naturally, the diagnosis that the court has found that he, in fact, possesses. Well, let me ask you this, in terms of connecting the dots, from refraining from sexual violent conduct to his finding of a serious mental disorder, I don't think the Supreme Court or this court has ever required an explicit connection. Isn't an implied connection enough? I believe it will be, Judge Floyd. And I believe that where the opinion states he has a deviant sexual interest, and then another section that's talking about that deviant sexual interest,  I don't believe that it's Talmudic that the court must state, having so found, although it might be helpful, having so found that he suffers from paraphernalia not otherwise specified, these are the factual examples of that, that show he has serious difficulty in refraining. It would be clearer for the court, perhaps, to do that, but I don't believe that there's a Talmudic- No magic words. No magic words that the court must state to, in fact, accomplish that. Isn't it the objective basis for the psychologist's subjective findings? That's correct. As every single fact finder, whether it's a- That was the basis for the findings they made. That's correct, Your Honor. Right, okay. Anything further? No, Your Honor. Thank you. Thank you, Mr. James. Thank you. Mr. Brignac? I think you can see from the questions the court's concerns, so if you could please address those. Of course, Your Honor. You had one question, again, presuming what the court would do. You asked what would the remedy be. I would say, you know, the district court, in some ways, makes this easy. He says, on that basis alone. Now, I would also say the district court did, in fairness, refuse to reach things like antisocial personality disorder and non-consent. And I think there's a huge legal question as to whether those could meet criteria. So I think a fair reading of the record would be to say if the district judge didn't reach certain conclusions based on what he did reach and felt he needed to reach, perhaps a remand would be appropriate, not for more evidence, certainly, but for him simply to consider that. Your Honor asked about an implied connection. You know, in pretty much every case that's come up before this court, the mental illness itself, you know, the volitional control was almost inherent in it. It was pedophilia, you know, an attraction to children. And if you were then going to, if the court finds you were going to have further sexual contact with children, you know, of course that's driven by your pedophilia. It's not driven by something else. In this case, you know, the question of there's no magic words that are needed, but there is something that's needed, and that something is evidence in the record. And we know that evidence didn't exist. We know there's nothing in the record saying that his exhibitionism would lead to further sexual offending because none of the experts diagnosed him with the quasi-exhibitionism. The reason, I think as Your Honor pointed out, that he sort of just focused on the static 99 and the past behaviors is that there was no link between the diagnosis, which none of the experts provided, and the final prong of the statute. I would also say, you know, even in the paragraph, he pointed to the paragraph on page 402, you don't even get to the end of that paragraph before Dr. Malnick is again talking about non-consenting victims. Didn't at least one of the psychologists say that in his or her opinion, if his advances were rejected, that they felt reasonably medically based, that he would be aggressive and could sexually assault the victim? And that may be true. First, I would say, Your Honor, that our job isn't to look in the record. Our job is to look at what the district court found, and he was very explicit about what he found and what he chose not to find. I would also say, you know, that may make Mr. O'Farrill as horrible as it is. It may make him a rapist. It may make him someone who will, upon being released from BOP, and that is what makes this case different. Wooden, Springer, Hall, Caporale, Francis, these are all cases where the real question before this court is, is this person going to offend again? The actual legal analysis collapsed into that. I cannot stand up here and tell you that Mr. O'Farrill is not going to, you know, commit criminal activity in the future. I hope he doesn't. Actually, because he'll be an INS detainer probably for the rest of his life, he may not. But the point is, the question is, unlike the cases we've had before, is the fact that he's going to commit criminal behavior again, did the district court find a mental illness to cause that? And is that finding of mental illness, which in this case was exhibitionism, related to the violent, predicted future violent activity, sexual assaults, rapes, and the like? We submit that they're not. All right. Thank you very much, sir. Thank you. We will come down to Greek Council and then proceed directly to the next case.
judges: Barbara Milano Keenan, Henry F. Floyd, Henry E. Hudson